UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN L. DEZWART,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | Case No. SACV 12-1321 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I.   SUMMARY

On August 28, 2012, plaintiff Kristen L. Dezwart ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 30, 2012 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 20, 2009, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 20, 145). Plaintiff asserted that she became disabled on January 28, 2000, due to a back injury. (AR 183). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 30, 2010. (AR 62-91).

On August 20, 2010, the ALJ determined that plaintiff was not disabled through March 31, 2005 (*i.e.*, plaintiff's "date last insured"). (AR 20-29). Specifically, the ALJ found that through the date last insured: (1) plaintiff suffered from the following severe impairment: lumbar spine disc disease, status post posterior fusion in July 2004 (AR 22); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 24); (3) plaintiff retained the residual functional capacity to perform a limited range of light work (20 C.F.R. § 404.1567(b)) with additional limitations[1] (AR 24); (4) plaintiff could not perform her past relevant work (AR 28); (5) there are

---

[1] More specifically, the ALJ determined that plaintiff: (i) could lift 20 pounds occasionally and 10 pounds frequently; (ii) could sit, stand, and walk 6 hours each, but needed to be afforded the opportunity to sit and stand at her option; (iii) needed to avoid climbing ladders, ropes and scaffolds; (iv) could occasionally climb, balance, stoop, kneel, crouch, and crawl; (v) needed to avoid working at unprotected heights and with hazardous moving machinery; (vi) had pain symptoms of a moderate nature which would normally have a moderate effect on her ability to perform basic work activities but could be controlled with appropriate medication without significant adverse side effects; and (vii) had psychiatric problems of a slight nature with a slight impairment in maintaining attention, concentration and memory which rendered her still capable of understanding and carrying out detailed instructions. (AR 24).

jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically Cashier II and Order Clerk (AR 28-29); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 25).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

1     (4)    Does the claimant possess the residual functional capacity to
2             perform claimant's past relevant work?  If so, the claimant is
3             not disabled.  If not, proceed to step five.
4     (5)    Does the claimant's residual functional capacity, when
5             considered with the claimant's age, education, and work
6             experience, allow the claimant to adjust to other work that
7             exists in significant numbers in the national economy?  If so,
8             the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

### B.    Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed properly to develop the record of plaintiff's mental impairments and, as a result, the ALJ's residual functional capacity assessment is not supported by substantial evidence. (Plaintiff's Motion at 3-7, 12-14). The Court agrees. As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

### A. Pertinent Facts

In the May 6, 2002 report of an initial orthopaedic evaluation of plaintiff for plaintiff's worker's compensation case, Dr. Jacob Rabinovich, plaintiff's treating orthopaedic surgeon, noted that plaintiff presented with "anxiety and depression." (AR 222).

In a June 10, 2002 Supplemental Orthopaedic Evaluation, Dr. Rabinovich stated "[plaintiff] is experiencing some anxiety and stress, and I recommend she be seen by a psychiatrist." (AR 226).

In supplemental reports dated July 8, August 12, and November 4, 2002, Dr. Rabinovich diagnosed plaintiff with "anxiety and stress." (AR 229, 234, 242).

In a supplemental report dated October 7, 2002, Dr. Rabinovich indicated that he had reviewed the report of a June 11, 2002 psychiatric evaluation of plaintiff conducted by Dr. Edwin Peck (which report was not made part of the instant record). Dr. Rabinovich stated, in pertinent part, the following about Dr. Peck's report: (1) around May 2000, plaintiff's pain and the severity of her condition began to cause plaintiff to feel frustrated, anxious, angry and nervous; (2) plaintiff underwent "a battery of psychological and psychiatric testing

(reported in a separate report)"; (3) "[t]he MMPI-2 test confirmed that depressive symptomology was part and parcel of [plaintiff's] pain disorder with physical and psychiatric components that reached a level of a major depressive episode"; (4) plaintiff's GAF varied between 40-60 depending on her level of physical pain; (5) "[i]t was noted that given [plaintiff's] psychiatric symptomotology and associated diagnosis, it was demonstrated that no orthopaedic surgeon could possibly cure and relieve the effects of [plaintiff's] industrial orthopaedic injury without obtaining psychiatric evaluation and treatment"; (6) for workers' compensation purposes, plaintiff was temporarily totally disabled on a psychiatric basis from May 1, 2000 through December 31, 2000, and from January 1, 2001 to June 11, 2001; and (7) Dr. Peck stated that he planned to start plaintiff "immediately" on a course of cognitive behavioral therapy, and once lab studies were cleared, plaintiff would also be started on Elavil 25mg.[2]  (AR 237-38).

      Dr. Rabinovich also stated the following with regard to Dr. Peck's report:

> On my initial evaluation of [plaintiff] on May 6, 2002, I had recommended that [plaintiff] be referred for psychiatric evaluation given the depression noted at that time.  [Plaintiff] has been seen by Dr. Peck at my request.  Dr. Peck has recommended psychotherapy for [plaintiff] which I would agree with.  I wish to adopt and incorporate [Dr. Peck's] opinions and recommendations as expressed in his report of June 11, 2002, as my own as [plaintiff's] primary treating physician.

(AR 239).

      During a June 23, 2003 Agreed Medical Re-Examination for plaintiff's workers' compensation case, plaintiff told the examining physician that she "[was]

---

[2]See Elavil, Drug Information Online, available at http://www.drugs.com/elavil.html ("Elavil is in a group of drugs called tricyclic antidepressants").

receiving supportive psychotherapy for her stress and anxiety" from a different psychologist (*i.e.*, "Dr. Claudio"). (AR 392).

At the July 30, 2010 hearing, plaintiff testified, *inter alia*, that she had memory problems, that she was "sad" (and possibly depressed),[3] and that she had seen a psychiatrist "a few years ago." (AR 81-82).

### B.  Applicable Law

Although each claimant bears the burden of proving disability, the ALJ has an affirmative duty to assist the claimant in developing the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted); Bustamante, 262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty fully and fairly to develop record and to assure that claimant's interests are considered). The ALJ's duty exists whether or not plaintiff is represented by counsel. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Moreover, "[t]he ALJ's duty to develop the record fully is [] heightened where the claimant may be mentally ill and thus unable to protect her own interests." Id. (citation omitted).

The ALJ is not obliged, however, to undertake the independent exploration of every conceivable condition or impairment a claimant might assert. Therefore, an ALJ does not fail in his duty to develop the record by not seeking evidence or ordering further examination or consultation regarding a physical or mental impairment if no medical evidence indicates that such an impairment exists. See Breen v. Callahan, 1998 WL 272998, at *3 (N.D. Cal. May 22, 1998) (noting that, in the Ninth Circuit, the ALJ's obligation to develop the record is triggered by "the presence of some objective evidence in the record suggesting the existence of a

---

[3] Plaintiff's response to her attorney's question "[do you have] any depression at all?" was not completely transcribed (*i.e.*, the transcript reflects plaintiff's answer as "[INAUDIBLE] and sad"). (AR 82).

condition which could have a material impact on the disability decision") (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991)).

### C. Discussion

First, the ALJ failed properly to develop the record of plaintiff's mental impairments. As noted above, the record currently reflects that (1) plaintiff's mental impairments likely included more than depression alone; and (2) based on extensive psychological testing, plaintiff was referred for psychotherapy and likely prescribed an anti-depressant. However, as the ALJ essentially acknowledged (AR 27), the record contains no reports of plaintiff's psychological testing results much less treatment records from her psychotherapy. Nor does the record contain any assessment by a treating or examining doctor of plaintiff's mental residual functional capacity. Moreover, the record does not reflect that ALJ attempted to obtain such treatment records. Instead, the ALJ essentially found that, due to lack of sufficient evidence in the record, plaintiff had failed to establish a severe medically determinable mental impairment. (AR 25). Similarly, the ALJ discounted the credibility of plaintiff's subjective complaints of severe depression essentially because "the record [was] lacking [] a record of continued treatment for [plaintiff's] alleged mental impairment." (AR 27). This was insufficient to satisfy the ALJ's duty fully and fairly to develop the record of plaintiff's mental impairments. Cf. Smolen, 80 F.3d at 1288 (ALJ may discharge duty fully and fairly to develop record in several ways, including: subpoenaing claimant's physicians, submitting questions to claimant's physicians, and continuing hearing to augment record); Armstrong v. Commissioner of Social Security Administration, 160 F.3d 587, 590 (9th Cir. 1998) (where there were diagnoses of mental disorders prior to the date of disability found by the ALJ, and evidence of those disorders even prior to the diagnoses, the ALJ was required to call a medical expert to assist in determining when the plaintiff's impairments became disabling).

Second, since there were no records before the ALJ from plaintiff's psychiatric treatment – much less any assessment by a treating or examining doctor of the effects of plaintiff's mental condition on her residual functional capacity – it appears that the ALJ's findings regarding plaintiff's mental condition at steps 2 and 4 were erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and the purported lack of treatment records. Consequently, the ALJ's findings, at least regarding the severity of plaintiff's mental impairments, and plaintiff's mental residual functional capacity, lack substantial evidence. See Penny, 2 F.3d at 958 ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."); Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ may not reject claim at step two "without the support of a physician's medical assessment") (citation and internal quotation marks omitted); see also Tagger v. Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.") (citations and internal quotation marks omitted); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[ALJ] must not succumb to the temptation to play doctor and make . . . independent medical findings.") (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)) (quotation marks omitted); Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.") (citations omitted).

Finally, the Court cannot find the ALJ's error harmless.[4] As noted above, the record suggests that plaintiff had mental impairments which, at a minimum,

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout, 454 F.3d at 1054-56 (discussing contours of application of harmless error standard in social security cases).

9

significantly impacted plaintiff's ability to concentrate and remember. Moreover, at the hearing, the vocational expert testified that there would be no jobs that plaintiff (or a hypothetical individual with the same characteristics as plaintiff) could do, if plaintiff was "off task two hours per day because of her symptoms, pain, side effects of medications and other problems" or if plaintiff "miss[ed] three days of work per month because of [her] symptoms." (AR 89-90). Therefore, the Court cannot conclude that the ALJ's evaluation of the severity of plaintiff's mental impairments and plaintiff's credibility, and in turn, his residual functional capacity assessment for plaintiff, would have been the same absent such error.

## V.    CONCLUSION[5]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 7, 2013                          /s/
                                       _____
                                       Honorable Jacqueline Chooljian
                                       UNITED STATES MAGISTRATE JUDGE

---

[5] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. On remand, however, the ALJ may wish to reevaluate plaintiff's credibility and consider whether further development of the record is necessary in order properly to consider the medical opinion evidence from plaintiff's worker's compensation case. Cf. Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988) (finding ALJ interpretation of treating physician's opinion erroneous where record clear that ALJ affirmatively failed to consider distinction between categories of work under social security disability scheme versus workers' compensation scheme).

[6] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).